STEENSLAND and another, Petitioners, vs. HOPPMANN, Circuit Judge, Respondent.

*December 13, 1933—January 9, 1934.*

594

*Gilbert, Ela, Heilman & Raeder* of Madison, for the petitioners.

*Laurence W. Hall* of Madison, for the respondent.

FAIRCHILD, J.   The petitioners asked the circuit court to permit them to inspect the minutes of the grand jury, each assigning as his reason therefor that "such inspection and right to make copies are necessary in order that the defendant may properly prepare for and make his defense herein, and in order that the defendant may be properly advised as to what pleas and motions to enter herein to properly protect all his rights in this action." The indictment sets forth eight counts, in substance charging both defendants on a certain date, being then officers of the Union Trust Company of Madison, a banking company, with having unlawfully and feloniously issued, circulated, and published, or caused the same to be done, misleading advertisements intending to induce investors to purchase trust-agreement securities from the Union Trust Company, "then and there well knowing that the said trust-agreement securities offered for sale by the said Union Trust Company" did not satisfy the representations so made, and that the money of the investors

in said trust agreements was not invested in the securities therein represented, it being charged in the indictment in effect as to each count thereof:

". . . that the said defendant, Edward B. Steensland, and the said defendant, Lorenzo D. Atkinson, then and there well knew that on the date of the said false, misleading, and deceiving advertisement, and for a long time prior thereto, the investors in Union Trust Company trust agreements were not assured of a five per cent. income thereon, and that the money of the investor in said trust agreements was not put to work in real-estate first mortgages, in that the money invested in trust-agreement securities with the said Union Trust Company, a corporation, then and there, and for a time prior thereto, had been by the said Union Trust Company, a corporation, invested in bonds, notes, and real-estate mortgages, many of which had been and then were in default on the day and date of their investment either as to principal, interest, or taxes, contrary to the provisions of chapter 189, 1931 Wisconsin Revised Statutes. . . ."

The petitioners show no adequate reason for permitting them to inspect the minutes of the grand jury. The grounds assigned by them are not sufficient to arouse such power as the court possesses over the proceedings and minutes of that body. There are cases to be found in the books treating with occasions where the power to inspect minutes of a grand jury has been exercised and situations may arise where, in the interests of justice, it is necessary for the court to pass behind the indictment to learn whether or not any proof existed to establish the offense charged. We are cited to the case of *People v. Molineux,* 27 Misc. 60, 57 N. Y. Supp. 936. This case is typical of many others which recognize as existing in the courts a power of control over the proceedings of a grand jury. In the case just referred to, Molineux was indicted after he had been a witness at a coroner's inquest at which he was not allowed to furnish testimony explaining that which was adverse to him. The

motion to inspect the minutes was supported by an affidavit that the evidence was insufficient in law to sustain an indictment, and the decision proceeds on the theory, over which there cannot be much difference of opinion, that a humane interpretation of the law is that a grand jury is forbidden to find an indictment without sufficient legal evidence. In the case of *People v. Restenblatt,* 1 Abb. Prac. Rep. 268, decided in February, 1855, the court was moved to go behind the indictments and take judicial notice of this want of proof for the purpose of setting them aside. The court in that case considered the question both new and important, and said:

"The criminal books afford almost no authority for the exercise of such a power, . . . nor yet is there any decision involving a principle of law or rule of criminal procedure going to interdict such innovation when prudently resorted to for the attainment of truth and the administration of that justice which is the right of all men."

In that case the evidence before the grand jury was established by stipulation between the district attorney, representing the prosecution, and the defendant, and on that evidence the court declared that "there was no lawful evidence whatever before the grand jury to negative the truth of the pretenses alleged."

Without further reference to cases in other jurisdictions, we will examine the decisions in this state. In *Murphy v. State,* 124 Wis. 635, 102 N. W. 1087, it was ruled that the testimony of grand jurors and of the district attorney as to statements made before the grand jury, and the minutes of the grand jury's proceedings, are admissible as original evidence, if not objectionable under the ordinary rules of evidence, whenever the court deems it necessary for the ascertainment of truth and the furtherance of justice. In that case the defendant claimed immunity because of the testimony which he had given before a grand jury some

years before. That doctrine was adhered to by this court in *Havenor v. State,* 125 Wis. 444, 104 N. W. 116, and Mr. Justice SIEBECKER, speaking for the court, said:

"It is urged that the plaintiff in error was entitled to inspection of such records in so far as they relate to the testimony given by plaintiff in error before the grand jury concerning the transaction involved upon this trial, and that such inspection should be awarded both before the trial and at the trial, for the purpose of preparing for trial and for laying the foundation for the impeachment of immune witnesses, whose testimony may be different on the trial from that given before the grand jury. No rules, either at the common law or by the statutes governing criminal procedure, award such a right. It was held in *Cornell v. State,* 104 Wis. 527, 80 N. W. 745, that a defendant in a criminal prosecution was not entitled to be informed of the names of the witnesses for the prosecution before trial, to enable him to prepare his case on the defense. We can see no distinction in the claim now made from the one made in that case. The reason for the request in both cases is that such information is necessary to enable the defendant to prepare for trial and to apprise him what evidence will be material to his defense. We do not see how the defendant can be prejudiced by withholding such information until the evidence is offered upon the trial, nor is it suggested in what respect this practice prevents him from procuring and adducing all the evidence at hand to establish the facts of his defense. The charge preferred in the indictment, information, or complaint fully informs him as to what facts the prosecution expects to establish by the evidence upon the trial, and this meets all the necessary requirements of the right which the accused has in criminal cases to be informed of the nature and cause of the accusation against him."

The proceedings of the grand jury are intended to be kept as secret as possible under the exceptions suggested in the discussion that has preceded. The oath to the jurors contains a promise of secrecy, and no grand juror is allowed to testify in any court as to the way he or any other member of the jury voted on any question before them, or as to the

opinion expressed by any juror in relation to such question. He may be required to testify as to whether the testimony of a witness upon a trial of the indictment is consistent with or different from the evidence given by such witness before the grand jury, and he may be required to disclose the testimony given before the grand jury by a person charged with perjury, upon a trial for such offense. Sec. 255.27, Stats.

Various reasons for thus guarding the proceedings in the grand jury room have been given, among them, to keep from an unarrested defendant the knowledge which would suggest escape, to prevent defendants from collecting perjured testimony for the trial, to render the witnesses before the grand jury more free in their disclosures. 1 Bishop, Criminal Procedure (4th ed.) sec. 857. And there exists the very practical reason, especially applicable to the situation where the jury is continuing to sit, that an inspection of the minutes, if permitted to any defendant for the purpose of preparing his defense, would advise the public of the subject under investigation, afford an opportunity to those interested in thwarting an inquiry into their acts of secreting evidence, tampering with prospective testimony, and generally embarrassing the work to be done by the grand jury, if not entirely defeating the object for which that body is designed. It is true that serious consequences occur in the event of the indictment of one because of malice, hatred, or envy, or for other unworthy reasons. Still, if such a result occurs, the discomfort and embarrassment must be borne until the indictment is properly impeached or the accused acquitted upon the trial. "The institution must stand, as the conscience of the citizens called to it dictates." *United States v. Violon,* 173 Fed. 501. Because of the serious consequences likely to follow criminal prosecutions, it is common in criminal cases to bring to bear legal niceties in behalf of a defendant and he has the benefit of the presumption of innocence, but the presumption of good faith in the dis-

charge of duties by men taking the solemn oath of members of a grand jury is an element in the situation and accompanies so formal an accusation as an indictment and *prima facie* is sufficient to imply reasonable grounds for holding one so indicted for trial. The fact that a defendant has not had a preliminary examination does not entitle him to an inspection of the minutes of the grand jury. *In re Montgomery,* 126 App. Div. 72, 110 N. Y. Supp. 793, appeal dismissed in 193 N. Y. 659, 87 N. E. 1123; *People v. Gassett,* 112 N. Y. Supp. 555; *People v. Jakeway,* 88 Misc. 124, 151 N. Y. Supp. 651; *People v. Muhlstein,* 153 N. Y. Supp. 909. It is expected that the charge in the indictment will advise him sufficiently so as to enable him to make a proper plea to the indictment. The general practice adhered to over many years, of limiting the occasions for giving publicity to matters before the grand jury, supports the contention of the state that an inspection of the minutes of such a body is not to be allowed except in the instances provided for by legislation and permitted by the courts when necessary to protect the rights of citizens in the administration of justice. *Report of Grand Jury,* 204 Wis. 409, 235 N. W. 789.

The circuit court in this case, with the consent of the district attorney and the special prosecutor, placed before the petitioners a copy of the proceedings had, and the steps taken in impaneling, swearing, and charging the grand jury, thus affording the opportunity of determining whether imperfections existed in the constitution of the body that might nullify its acts. This, we consider, is as far as the court could comply with the prayer of the petitioners. One accused of crime may be permitted to examine books, records, and articles which he is advised are to be used as evidence upon the trial, but he does not have a right to compel, in advance of trial, a disclosure of the evidence relied upon by the public authorities for his conviction. *Havenor v. State,*

*supra; State ex rel. Schroeder v. Page,* 206 Wis. 611, 240 N. W. 173; *United States v. Violon, supra; United States v. Rubin,* 214 Fed. 507; *People v. Gassett, supra.*

The grand jury is used in Wisconsin as an extrajudicial instrumentality. It does not convene regularly as it does in some jurisdictions. It convenes when ordered by a trial court. Every means is employed to insure disinterested and impartial consideration of matters presented to it. The practice followed is, however, not dissimilar from that in other jurisdictions where it is regularly employed as an investigating and accusing body. The variance between methods used here and elsewhere may be the basis of some difference in policy, but there is no rule that we can accept to be found in any jurisdiction that is authority for opening to the defendant the records of a grand jury for the purposes sought to be served in the case before us. In *People v. Glen,* 173 N. Y. 395, 66 N. E. 112, while stoutly maintaining the existence of the power in the court to set aside indictments by a grand jury under certain circumstances, the court of appeals of that state strictly adhered to the doctrine that an indictment is a record of the court importing absolute verity until impeached. In dealing with motions previous to trial, the doctrine is that a presumption exists that an indictment found by a grand jury is based upon legal and sufficient evidence until it is met by satisfactory proof to the contrary. That doctrine agrees with the rule followed in the *Havenor Case.* When this is accepted as the rule, there remains no basis for the claim that the petitioners are entitled to an inspection of the minutes of the grand jury as prayed for in their petition.

*By the Court.*—Leave to commence action denied.