OPINION OF THE COURT
Fritz W. Alexander, J.
In this proceeding, commenced pursuant to CPLR article 78, petitioner seeks an order “directing respondents to deny the request of the Water Enforcement Branch of the United States Environmental Protection Agency, Region II [EPA-Region II] *** pursuant to New York’s Freedom of Information Law, for the production of any documents or copy thereof, removed from the premises of petitioner by Dr. Morris H. Baslow” and “enjoining respondents from disseminating or otherwise disclosing any such documents to EPA-Region II or any other party”.
The United States of America, on behalf of its agency, EPA-Region II, was granted leave to intervene in this proceeding by order dated November 26, 1980.
*357 For the reasons set forth below the petition is dismissed and the temporary restraining order contained in the order to show cause dated July 30, 1980 and continued by this court by oral order on August 1, 1980, is vacated.
FACTS
Petitioner, Lawler, Matusky & Skelly Engineers (LMS), is a confidential technical consultant to four utility companies, which are engaged in an adjudicatory administrative proceeding pending before EPA Administrative Law Judge Thomas B. Yost, regarding permits issued pursuant to the National Pollutant Discharge Elimination System.
Dr. Morris H. Baslow (Baslow) was a senior level employee of LMS until his discharge in October, 1979. It appears that his discharge was for reasons unrelated to the EPA proceeding, although he had been intimately involved in the research project undertaken by LMS on behalf of the utilities and was familiar with the data and testimony submitted by LMS in that proceeding. Baslow had been in serious disagreement with his superiors concerning data and conclusions LMS had tendered in the EPA proceeding. It appears that he had previously drafted, but not mailed, a letter to Judge Yost challenging the validity of certain of that data. In any event, on October 9, he redated and mailed the letter to Judge Yost and indicated therein that there was documentation to support his charges.
Rather than requesting Baslow to submit the documentation, Judge Yost notified the parties of the receipt of Baslow’s letter. Baslow thereafter, in November, forwarded to Judge Yost some 71 documents he had removed from LMS at or about the time of his discharge, which he contended supported his assertions as to the invalidity of data and testimony submitted in the EPA proceeding.
Some of the parties involved in the EPA proceeding were also parties to an unrelated proceeding then pending before Administrative Law Judge Stephen L. Grossman of the Federal Energy Regulatory Commission (FERC) regarding a proposed Storm King, New York, pump-storage project. Richard Azzaro, a FERC staff attorney, upon learning of the Baslow letter to Judge Yost, requested from Baslow, a set of the documents that had been for *358 warded to Judge Yost. Baslow complied with Azzaro’s request, apparently with the knowledge and approval of his attorney.
Before Azzaro had actually received the documents, Baslow’s attorney reconsidered the appropriateness of disseminating the material to Azzaro and requested its return. Azzaro initially agreed to comply with this request but later refused. Rather, in December, 1979, Azzaro forwarded a set of the documents to Judge Grossman, after making copies thereof for the FERC staff.
Asserting that their clients had a proprietary interest in these documents and that their surreptitious removal violated their clients’ constitutional rights, and also that the documents were confidential communications between attorney and client, the lawyers representing the utilities requested that Judge Yost safeguard the documents and not permit their dissemination. Judge Yost directed the parties to submit briefs on the issues raised by the utilities and ordered that in the interim “all parties *** shall refrain * * * from soliciting from any person any document regarding the subject matter of Dr. Baslow’s letter *** dated October 8, 1979.”
The New York Attorney-General, respondent herein, who was also a party to the proceeding before Judge Yost, sought a modification of that order so as not to preclude the parties from obtaining the documents from other sources. Judge Yost acceded to that request and modified his order to provide that it be “construed so as not to prohibit any person from exercising their statutory rights' under the Federal Freedom of Information Act; nor from effectively presenting any case in a different jurisdiction or forum.”
Respondent then requested and received the Baslow documents from Azzaro of FERC. In the interim Judge Yost, in furtherance of his “desire *** to continue to keep the matters contained in the documents confidential within the context of [the ERA] proceeding” directed, in an order dated February 13, 1980, that any party to the EPA proceeding, standing in opposition to the utilities, “shall not reveal in any fashion * * * the contents of [the 71 documents] in his or her possession, no matter how ac *359 quired, to any other party in [the EPA proceeding] who is not involved in the Storm King proceeding.”
On the same day Judge Yost’s order was issued, EPA-Region II, although apparently not then a party to the Storm King proceeding, requested the Baslow documents from respondent pursuant to New York’s Freedom of Information Law (Public Officers Law, art 6 [FOIL]). Petitioner and the utilities objected to respondent making these documents available to EPA-Region II, arguing inter alia, that having been improperly acquired by the Attorney-General, the documents were not “agency documents” within the context of FOIL, that they had been obtained in violation of their constitutional rights and contained privileged material which rendered them exempt from disclosure under New York’s Freedom of Information Law.
Respondent withheld immediate compliance with the EPA-Region II request and invited all interested parties to submit briefs on the matter of the availability of the documents under FOIL.
Similar claims of confidentiality and constitutional violations were raised in the FERC proceeding concerning the dissemination of the Baslow documents. Consolidated Edison had raised these issues as the basis for refusing to respond to interrogatories served by FERC counsel directed specifically to the Baslow documents. Judge Gross-man undertook to determine the validity of these claims and conducted extensive in camera hearings.
While these issues were still pending before Judges Yost and Grossman, respondent on June 27, 1980, in response to EPA-Region II’s demand for an immediate determination of its FOIL request, overruled the objections of petitioner and the utilities and held that the documents in question were available for inspection and/or copying under New York’s Freedom of Information Law. Release of the documents was withheld until July 31,1980, however, in order to permit the question of privilege to be “considered in the context of [the] litigation” pending before Judge Yost. Respondent noted in his determination that the “Judge has a far better understanding of the matters being litigated than does a records access officer who has played *360 no part in the litigation.” Respondent further noted that “it is possible that Judge Yost will disagree with the position of this office and will find that privilege attaches to the documents. If I were to release these documents at this time and Judge Yost were then to hand down a decision holding that the documents are privileged, I would have effectively undercut his decision.”
Respondent reaffirmed this determination on July 9 and July 22, 1980.
Petitioner seeks to overturn this determination, raising here the identical claims of confidentiality, privilege and constitutional protection asserted before respondent and before Judges Yost and Grossman. While this proceeding was sub judice both Judge Yost and Judge Grossman rendered decisions determining these issues in the respective proceedings pending before them.
Judge Grossman held that the Baslow documents were “not subject to evidentiary claims of attorney-client privilege or work-product immunity,” and that “use of these same documents by [FERC] staff for purposes of discovery in the context of this proceeding does not contravene the prohibitions of the Fourth Amendment.” He directed Consolidated Edison to respond to the interrogatories propounded by FERC staff and lifted the restraints imposed on the copying and dissemination of the Baslow documents.
Judge Yost similarly determined that there had been no showing of any violation of petitioner’s Fourth Amendment rights respecting the Baslow documents, that no attorney-client privilege attaches to any of the documents, and that with the exception of one document [No. 47] they were all discoverable in the EPA proceeding even though most of the documents probably enjoyed “ordinary work-product” immunity since the required showing of necessity and uniqueness had been demonstrated. He found that document No. 47 constituted “attorney work-product” and was immune from discovery.
THE LAW
That it is the clear public policy of this State to permit unfettered and untrammelled public access to all records and other papers kept “in a public office” where secrecy is *361 not enjoined by statute or rule, is not open to question. (Public Officers Law, § 85 et seq.; Matter of New York Post Corp. v Leibowitz, 2 NY2d 677; Matter of Werfel v Fitzgerald, 23 AD2d 306.) Thus agencies of this State are enjoined by subdivision 2 of section 87 of the Public Officers Law to “make available for public inspection and copying all records” and may deny access to records and portions thereof only in those instances specifically enumerated in that statute.
While the posture of this case is somewhat unusual, in that petitioner seeks to prevent disclosure whereas in most cases reviewed in the reported decisions, disclosure is sought to be compelled, the principles enunciated in those decisions are equally applicable here.
Petitioner seeks to incorporate into the FOIL exemptions, restrictions upon disclosure found in other areas of the law; specifically, the attorney-client privilege found in CPLR 4503 and the provisions relating to disclosure found in CPLR 3101 (subd [b]; privileged matter); 3101 (subd [c]; attorney’s work product) and 3101 (subd [d]; material prepared for litigation). They also assert a violation of their Fourth Amendment rights and argue that the documents constitute trade secrets, that their disclosure would constitute an unwarranted invasion of personal privacy and would also interfere with judicial proceedings or deprive them of a right to a fair trial or impartial adjudication and thus are exempt under subdivision 2 of section 87 of FOIL.
Respondent has rejected these arguments and its determination may be disturbed by this court only if it is shown that the determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion. (CPLR 7803, subd 3.) No such showing has been made. Indeed, quite the contrary appears. Two Administrative Law Judges have reviewed an index of the disputed documents and heard the same arguments advanced by petitioner to this court. Judge Grossman found that none of the documents are exempt from discovery in the proceedings before him and Judge Yost has found that only one of the documents should not be disclosed because of an “attorney opinion *362 work product privilege.” While this court is not bound by these determinations, nothing has been shown in the papers submitted herein that would warrant a contrary conclusion.
As aptly stated by the Court of Appeals in Westchester Rockland Newspapers v Kimball (50 NY2d 575, 580), “the burden of demonstrating that the material requested is exempt now falls squarely on the shoulders of the one who asserts it * * *. Put another way, in the absence of specific statutory protection for the requested material, the Freedom of Information Law compels disclosure, not concealment.” (Emphasis added.)
This court declines to adopt the sweeping argument advanced by petitioner to the effect that the limitations upon disclosure found in the CPLR apply equally to disclosure under the Freedom of Information Law. While this question is not at all free from doubt (see Matter of Burke v Yudelson, 81 Misc 2d 870, affd 51 AD2d 673; cf. Westchester Rockland Newspapers v Mosczydlowski, 58 AD2d 234), petitioner’s contention is overbroad and if adopted, would tend to emasculate the clear legislative intent regarding free access to agency records. It has been held that “the discovery provisions of the Civil Practice Law and Rules do not restrict disclosure of records made public under the Freedom of Information Act. If the documents are available to the public under the latter, they are not restricted ipso facto solely because the applicant is also a litigant.” (Matter of Burke v Yudelson, 51 AD2d 673, 674, supra.) Indeed the public policy of this State regarding full disclosure in litigation is equally as strong as that regarding full disclosure in respect to governmental agencies. There too the party seeking to resist disclosure has the burden of claiming a specific exemption, privilege or immunity and demonstrating that the material sought is within such exemption, privilege or immunity. (Koump v Smith, 25 NY2d 287; City of New York v BusTop Shelters, 104 Misc 2d 702, 706.)
Petitioner has failed, on this record, to satisfy either aspect of this burden and to demonstrate that the Baslow documents are exempt from disclosure under any of the eight categories of exemptions specified in subdivision 2 of *363 section 87 of the Public Officers Law. Respondents’ determination granting the freedom of information request of EPA-Region II should not be disturbed.
Accordingly, judgment may be settled, dismissing the petition.